Matter of Foxcroft Vil., LLC v Town Assessor of the Town of Fallsburg (2019 NY Slip Op 07822)





Matter of Foxcroft Vil., LLC v Town Assessor of the Town of Fallsburg


2019 NY Slip Op 07822


Decided on October 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 31, 2019

527795

[*1]In the Matter of Foxcroft Village, LLC, Appellant,
v
Town Assessor of the Town of Fallsburg et al., Respondents. (And Three Other Related Proceedings).

Calendar Date: September 3, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Law Offices of Marvin Newberg, Monticello (Marvin Newberg of counsel), for appellant.
Bruce Perlmutter, Woodridge, for respondents.



Lynch, J.
Appeal from an order of the Supreme Court (Galalis, Referee), entered May 14, 2018 in Sullivan County, which dismissed petitioner's applications, in four proceedings pursuant to RPTL article 7, to reduce the 2014, 2015, 2016 and 2017 tax assessments on certain real property owned by petitioner.
Petitioner owns real property, improved by a mobile home park, in the Town of Fallsburg, Sullivan County, commonly known as Foxcroft Village. In tax years 2014, 2015, 2016 and 2017, the property was assessed at $4,698,925, which equated to an estimated fair market value in 2014 of $7,229,115.[FN1] Petitioner challenged the assessments for each of the four subject tax years and, following the denial of its administrative grievances, commenced these four proceedings pursuant to RPTL article 7 seeking reduction of the assessments. The parties agreed to a trial before a court attorney-referee for determination of the value of the property based on appraisals for the 2014 and 2015 tax years and, further, that the value so determined would apply to all four tax years. Petitioner presented the testimony and report of Lucien Curre, who valued the property at $4,366,545. Respondents' appraiser, John Zukowski, valued the property at $10,400,000. Following trial, the Referee dismissed petitioner's applications, finding that petitioner did not overcome the presumptive validity of the tax assessments. The Referee proceeded to find, alternatively, that, even if petitioner had met this initial burden, the proceedings would have to be dismissed because petitioner failed to establish by a preponderance of the evidence that the property was overvalued. Petitioner appeals.
"Inasmuch as a rebuttable presumption of validity attaches to the valuation of property made by the taxing authority, a petitioner in an RPTL article 7 tax certiorari proceeding challenging the accuracy of an assessment bears the initial burden of coming forward with substantial evidence that the property was overvalued by the assessor. Substantial evidence is a minimal threshold standard that simply requires that a petitioner demonstrate the existence of a valid and credible dispute regarding valuation. A taxpayer most often meets this burden through submission of a detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser" (Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors, 124 AD3d 1042, 1044 [2015] [internal quotation marks, brackets, ellipsis and citations omitted]).
Contrary to the Referee's determination, we find that petitioner submitted an appraisal that satisfied the minimal threshold standard necessary to rebut the presumption of validity (see Matter of AG Props. of Kingston, LLC v Town of Ulster Assessor, 138 AD3d 1273, 1274 [2016], lv denied 27 NY3d 912 [2016]). Petitioner's report was prepared by a qualified appraiser who was familiar with the unique task of estimating the value of mobile home parks and used standard and accepted appraisal techniques, utilizing both a market sales and income approach. The Referee found that petitioner's appraisal was insufficient because Curre failed to provide objective data regarding two factors utilized in the income capitalization analysis: (1) adjustments that he made to expenses, and (2) calculation of the capitalization rate. Although Curre testified that he made adjustments to expenses based on his extensive personal experience with the operation of mobile home parks, his adjusted expense figures could be readily compared to the actual expense figures for 2014. We further note that the actual expenses were $974,762 and Curre's adjusted expenses were $948,032 — a difference of only $26,730 — and that the resulting estimated net income was only $7,924 less than the actual net income of $400,199. The appraisal also contained expense ratio information for the comparable properties that he utilized. Thus, Curre's appraisal report contained sufficient information to afford respondents' counsel the opportunity to effectively prepare for cross-examination on this issue (see Matter of Gran Dev., LLC v Town of Davenport Board of Assessors, 124 AD3d at 1045).
Although Curre's capitalization rate was based, in part, on his personal experience and knowledge, the appraisal report also contained information about the components of the capitalization rate (see Matter of George A. Donaldson & Sons, Inc. v Assessor of the Town of Santa Clara, 135 AD3d 1138, 1142 [2016], lv denied 27 NY3d 906 [2016]).[FN2] The appraisal showed that Curre assumed a loan-to-value ratio of 60%, and it contained tabular data from Realty Rates — the same source used by Zukowski — that relate to the values that Curre assigned for mortgage interest rates and return on equity. Thus, Curre's appraisal contained sufficient information to allow respondents' counsel to effectively prepare for cross-examination regarding the capitalization rate.
Having determined that petitioner rebutted the presumption of validity, we must " weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether petitioner established by a preponderance of the evidence that the property has been overvalued" (Matter of AG Props. of Kingston, LLC v Town of Ulster Assessor, 138 AD3d at 1277 [internal quotation marks, brackets and citations omitted]). Inasmuch as the valuation of property is largely a question of fact, we give deference to the Referee's resolution of credibility issues and will affirm that decision unless it is based on an erroneous legal determination or it appears that the Referee failed to appropriately weigh conflicting evidence (see Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors, 124 AD3d at 1046).
We find no basis for disturbing the Referee's determination that petitioner failed to establish by a preponderance of the evidence that the property was overvalued. The Referee found that Curre's income capitalization analysis was unreliable because Curre failed to specify how he determined the capitalization rate. Although his appraisal contained sufficient information to meet the minimal threshold required to rebut the presumption of validity, it failed to meet the higher standard required to establish — by a preponderance of the evidence — that the property was overvalued. In that regard, we agree that Curre provided no explanation to support either his use of a 60% loan-to-value ratio, the interest rate utilized for the mortgage loan component or the reasonable rate of return to equity.[FN3] We also agree that Curre utilized incorrect equalization rates when calculating the tax factors for 2014 and 2015.
The Referee further found that Curre's comparable sales analysis for the property's site and improvements lacked credibility and, therefore, did not support his determination that the fair market value of the property was $8,000 per mobile home site. The three comparable sales that Curre utilized were Turf Mobile Home Park, East Avenue Mobile Home Park and Millgate Meadows Mobile Home Park, with adjusted sales prices per mobile home site of $7,627, $8,768 and $11,268, respectively. Notably, however, the appraisal shows that the most recent sale of East Avenue Mobile Home Park in 2010 for $2,094,498 was not an arm's length transaction. Curre reported that East Avenue Mobile Home Park had sold for $5,965,543 in 2008 and $6,000,000 in 2004, but he provided no explanation for the dramatic reduction in price from 2008 to 2010. Curre's comparable sales analysis is further flawed by his determination to give more weight to the two comparable sales with the lowest sales prices.[FN4] Inasmuch as his analysis already included a negative adjustment of 10% for the Millgate Meadows Mobile Home Park sale based on its condition relative to the property, we agree that his rationale constituted a double adjustment for that factor. Thus, according deference to the Referee's resolution of credibility issues, we agree that petitioner failed to establish by a preponderance of the evidence that the property had been overvalued.
Egan Jr., J.P., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The equalization rate for 2014 was 65%.

Footnote 2: We note that Matter of George A. Donaldson & Sons, Inc. v Assessor of the Town of Santa Clara, (135 AD3d at 1138) and Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors (124 AD3d at 1042) were decided after Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst (23 NY3d 168 [2014]).

Footnote 3: The appraisers agreed that the capitalization rate is comprised of three components: (1) the interest rate on debt; (2) the market rate of return an investor would require on the equity investment; and (3) a tax factor. The tax factor constitutes the real property taxes that would be payable on the value of the property as determined by the appraiser by applying the actual tax and equalization rates.

Footnote 4: In fact, the resulting estimated value of $8,000 per site demonstrates that Curre relied exclusively on the two comparable sales with the lowest per-site sales prices and did not give any weight to the Millgate Meadows Mobile Home Park sale. We further note that he utilized the East Avenue Mobile Home Park sale as a comparable sale and gave it additional weight, even though he acknowledged it was not an arm's length transaction.